Argued September 24; affirmed October 21, 1941

## LATHAM *v.* STATE UNEMPLOYMENT COM-PENSATION COMMISSION ET AL.

### (117 P. (2d) 971)

Before KELLY, Chief Justice, and BAILEY, LUSK, RAND and BRAND, Associate Justices.

*Wm. P. Lord,* of Portland (T. Walter Gillard, of Portland, on the brief), for appellant.

*H. Lawrence Lister,* Assistant Attorney General (I. H. Van Winkle, Attorney General, on the brief), for respondents.

RAND, J. The plaintiff, a former employee of the Cobbs & Mitchell Company, a corporation which was engaged in the business of logging and the manufacture of lumber at Valsetz, Oregon, appeals from a judgment of the circuit court sustaining an order of

the State Unemployment Commission which denied his claim for unemployment benefits.

The commission based its decision upon its finding that plaintiff's unemployment was due to a stoppage of work growing out of a labor dispute at the plant of the Cobbs & Mitchell Company at which he had been last employed.

.The law then in force was chapter 398, Or. L., 1937. Section 4 of that act expressly provided that:

"An individual shall be disqualified for benefits:
* * *

.·· (e) For any week with respect to which the commission finds that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment or other premises at which he is or was last employed; provided, that this subsection shall not apply if it is shown to the satisfaction of the commission that:

(1) He is not participating in or financing or directly interested in the labor dispute which caused the. stoppage of work; and

(2) He does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute; provided, that if in any case separate branches of work which are commonly conducted as separate businesses in separate premises are conducted in separate departments of the same premises, each such department shall, for the purpose of this subsection, be deemed to be a separate factory, establishment or other premises."

Under section 10 of that act, the right of appeal to the courts is given to any unsuccessful claimant from an adverse decision of the commission which

denies his claim for compensation. That section, however, expressly provides that:

"* * * In any judicial proceeding under this section, the findings of this commission as to the facts if supported by evidence and, in the absence of fraud, shall be conclusive and the jurisdiction of said (such) court shall be confined to questions of law."

There is no contention of fraud in this case and, hence, the sole question for decision is whether the finding of the commission is supported by substantial evidence.

Before passing upon said claim, the matter was referred by the commission to a referee who, after due notice to all interested parties, took testimony consisting of 350 typewritten pages and this record was certified to the circuit court, which affirmed the decision of the commission, and is now before us for examination.

From this record, it appears that plaintiff had been employed by the Cobbs & Mitchell Company as a donkey engineer for more than two years before the company ceased operations. It also appears that the company employed some 350 men in its operations and that, by an agreement entered into with its employees, it operated as a closed shop, all of its employees at that time being members of Local Union No. 2636; that later Local Union No. 2692 was organized for the purpose of taking into its membership all said employees engaged in logging, and thereafter all the employees of said company belonged to one or the other of said unions, both of which were affiliates of the American Federation of Labor.

It also appears from the record that on and prior to November 15, 1937, the marketing conditions were

such that the company was having difficulty in paying its operating expenses and, on that date, all the employees of said company, except three of which the plaintiff was not one, for the purpose of continuing the operations of said company, individually signed and delivered to the company a document reading as follows:

"Cobbs & Mitchell Company,
   Valsetz, Oregon.

Gentlemen:

Recognizing the impossibility of your profitably continuing your operations during the present conditions of the lumber market at the current costs, and desiring to co-operate with you to the mutual advantage of all, and in consideration of your continuing the sawmill and logging operations on a forty hour week basis during the ensuing winter months, or as much thereof as seems practical to you, we the undersigned employees agree to work, beginning November 15, 1937, forty hours a week, and to accept in full payment for such forty hours of work thirty-five hours pay at the present scale of wages for our respective positions. This plan to continue in full force and effect until it is mutually agreed by and between your company and the undersigned employees, or their representative, that the lumber market conditions warrant a restoration of normal working conditions and rate of pay."

It further appears that, on December 21, 1937, the company entered into a contract with Local Union No. 2636, which at the time included all the employees of the company, in and by the terms of which it was agreed that:

"The wage scales established under this agreement shall be 60c per hour for unskilled labor, with the same differentials that apply at this date at this

plant for semi-skilled and skilled labor. Provided, however, that nothing in this article contained shall, in anywise, invalidate that certain agreement entered into November 15, 1937, by and between employer and the employees."

The record further shows that, on or about February 1, 1938, the employees became dissatisfied and demanded that they be paid for all hours worked and, upon this demand being refused, went on strike which lasted for one day only. On the following day, it was agreed that the wage scale of 60 cents per hour for unskilled workers with the same differentials that had formerly applied to semi-skilled and skilled labor should be reinstated and that the men should receive pay for the full time employed. This continued until April 26, 1938, when the company, finding that it could not operate profitably and pay that scale of wages, notified the president of Local Union No. 2636 that it could not continue operations, said notice reading as follows:

"Mr. Roy Stryker, President,
Lumber & Sawmill Workers Union, Local No. 2636,
Valsetz, Oregon.

Dear Sir:
We hereby wish to advise you that this company is unable to continue the logging and sawmill operations, and we are closing down as of tonight.
Operations will not be resumed until such time as we can negotiate a wage scale which will be satisfactory to both the company and employees.

Yours very truly,

COBBS & MITCHELL COMPANY,
(Signed) H. F. Thomas,
General Superintendent."

The plant was then closed down and continued to be closed until about the middle of May, 1938.

During the time the mill was so closed, the employees employed a certified public accountant to investigate the books and records of the company and to ascertain whether or not the company's business was profitable. This investigation was made and, thereafter, it was agreed that the men should work under a sliding wage scale with the minimum fixed at 50 cents per hour and the wages to be raised whenever the company's profits would justify such action. This arrangement continued and the men worked and were paid under said sliding scale until Local Union No. 2636 received the following letter:

"Aug. 9, 1938.

Mr. Hugh Walters, Sec.
Local Union No. 2636
Valsetz, Oregon.

Dear Sir and Brother:

At the Special Convention of the Oregon-Washington Council of Lumber and Sawmill Workers, held in Vancouver in June 1938; the delegates moved to place any operation that put the 'Sliding Scale' into effect on the 'Unfair List' of this Council.

This action was deemed necessary due to the fact that the sliding scale is just another way to cut the wages of the employees and in that way jeopardize the wages of other workers in all sections.

From the contract between your local and the management, pertaining to the sliding scale and the price of lumber it will be nearly impossible to put the wages back to where they should be and to where others are now.

"This scale also makes it possible for an employer to undersell his competitors and cause the workers to pay the difference and our organization is unalterably

opposed to causing unfair competition at the price of wages. Cutting wages has never, and will never, bring back better conditions and is unfair to all members and operations concerned with the Lumbering Industry of the Northwest.

Hoping that your membership will be considerate of the members who have held their wages even at the expense of a strike, and take immediate action to put your wages back to the former scale before it becomes necessary for other members of the Lumber and Sawmill Workers to classify you as Unfair to them, I wish to remain

Fraternally yours,

(Signed) Kenneth Davis.''

The testimony shows that, unless the demands contained in said letter were complied with, all the employees of the company belonging to said union would be placed on the unfair list and the lumber produced by the company would be boycotted, which would render the future operation of the Cobbs & Mitchell plant impossible.

It also appears that, upon receiving this letter, the matter was considered in a meeting held by Local Union No. 2636, and the following motion was adopted, to wit:

''Motion was made to send the Grievance Committee to see Mr. Mclean and tell him we wanted the wages back the same as they were prior to the cut of May 1, 1938, or we would not go back to work Monday Morning, Aug. 15, 1938.''

The testimony further shows that the letter was called to the attention of the members of Local Union No. 2692, and that the grievance committee of both said unions notified the Cobbs & Mitchell Company that the members of said unions could not continue work unless the sliding scale was done away with and

their wages were raised to the minimum of 60 cents per hour for unskilled labor. Thereupon the company ceased operations and closed down its plant, and operations were not resumed at the time of the hearing before the referee above referred to.

That there was a constantly recurring controversy between the company and its employees as to the wages to be paid said employees, and that this was the cause of the shutdown and the consequent stoppage of work is clearly established by the foregoing resume of the evidence taken before the referee.

It was also shown that plaintiff was one of a committee composed of members of both locals which orally notified the company that, unless the wages were restored as demanded in said letter, neither he nor any other employee of the company would continue their employment on and after the following Monday, and that, upon receipt of said notice, the company immediately ceased operations.

From this, it follows that the evidence amply supported the finding of the commission and, hence, under the express terms of the statute, that finding is conclusive and cannot be questioned in this court.

For these reasons, the decree of the circuit court is affirmed.